IN THE UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
CIVIL ACTION NO. _____

| | |
|---|---|
| AMERICAN SELECT INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> NATURAL BLEND VEGETABLE DEHYDRATION, LLC and THE HANOVER AMERICAN INSURANCE COMPANY, <br><br> Defendants. | **COMPLAINT** |

NOW COMES the Plaintiff, American Select Insurance Company, and pursuant to Rule 57 of the Federal Rules of Civil Procedure, 28 U.S.C. § 2201 and N.C. Gen. Stat. § 1-253 and complaining of the Defendants in seeking declaratory relief alleging and saying as follows:

1.     This action sets forth a claim for declaratory relief with respect to the applicability and interpretation of two separate contracts of insurance between the Defendant, Natural Blend Vegetable Dehydration, Inc. (hereinafter "Natural Blend") and Plaintiff, American Select Insurance Company and Defendant The Hanover American Insurance Company, respectively.

2.     The Plaintiff seeks declaratory relief as to an actual and justiciable controversy between the Plaintiff and the Defendants with respect to the applicability of the subject policies to Defendant Natural Blend's claims made arising out of a fire loss occurring on November 27,

2015, to property located at 8966 West Marlboro Road, Farmville, North Carolina. The property was insured by the two policies at issue at various times.

3.      The Plaintiff, American Select Insurance Company, is a foreign corporation formed and existing under the laws of the State of Ohio that was, at all times relevant hereto, in the business of providing property and casualty insurance to various entities such as Defendant Natural Blend.

4.      The Defendant, Natural Blend Vegetable Dehydration, LLC, is a limited liability company, formed and existing under the laws of the State of Delaware, with its principal place of business in Farmville, Pitt County, North Carolina.  Upon information and belief, all members of the LLC are domiciled in North Carolina.

5.      The Defendant, The Hanover American Insurance Company, is, upon information and belief, a corporation formed and existing under the laws of the State of Georgia with its principal place of business in Atlanta, Fulton County, Georgia.

6.      Pursuant to 28 U.S.C. § 1332(a), complete diversity exists between the parties.

7.      The matter at issue involves a claim for the recovery of insurance policy proceeds by Defendant Natural Blend in an amount totaling $3,238,254.70.

8.      The amount in controversy between the parties exceeds $75,000.00 and this action will determine whether either insurance carrier, if any, is liable to Defendant, Natural Blend, for these policy proceeds.

9.      As complete diversity exists between the parties, and the amount in controversy exceeds $75,000.00, jurisdiction of this Court is appropriate pursuant to 28 U.S.C. § 1332(a)(2005).

10.     Venue is proper in the United States District Court for the Eastern District of North Carolina as the subject property is located in Pitt County, North Carolina, which sits within this Federal District.

## FACTS

11.     On or about September 16, 2013, Natural Blend Vegetable Dehydration, LLC, was duly formed under the laws of the State of Delaware, and at all times relevant hereto, has remained in good standing and was registered to do business within the State of North Carolina.

12.     Upon information and belief, Natural Blend was formed as the result of a joint venture between a current or former subsidiary of the Del Monte Corporation and a large family farming business in Eastern North Carolina operated under the names Ham Farms, Ham's Produce, and/or Carolina Agribusiness, and/or one these entities' various subsidiaries or parent/sister companies.

13.     The purpose of the joint venture was to create and operate a facility for the dehydration, storage, and shipment of sweet potato products produced by Ham Farms and/or other growers.   The dehydrated sweet potato products were to be used primarily in the production of pet food and other products.

14.     Upon information and belief, Big Heart brands, a division of Del Monte Foods, or some related entity, was a participating member in the venture and was Natural Blend's primary and only customer.

15.     Bobby Ham, the primary owner of the various Ham Farm enterprises, was, at all times relevant hereto, the managing member of the Natural Blend, LLC entity.

16.     Upon information and belief, Natural Blend began operation of its facility in approximately October of 2014. The facility consisted of an office/processing plant located at 8966 West Marlboro Road, Farmville, North Carolina. In addition, two large multi-story steel silos were constructed for the dry storage of the finished product produced by Defendant Natural Blend.

17.     On or before February 26, 2015, Natural Blend entered a contract of insurance with the Plaintiff for the provision of commercial property insurance at the Natural Blend facility. The effective dates of said policy were February 26, 2015 through February 26, 2016. A copy of the applicable policy is attached hereto as Exhibit "A".

18.     Upon information and belief, due to a change in both ownership and management philosophy with one of the original members of the Natural Blend LLC, additional ownership interest in the LLC was transferred to Bobby Ham and/or the Ham Farm's entities on or about November 15, 2015.

19.     As a result of the change in ownership, Defendant Natural Blend sought and obtained new commercial property insurance through Defendant, The Hanover American Insurance Company (hereinafter "Hanover").

20.     As a result of this transaction, representatives for Defendant, Natural Blend, effectuated the cancellation of the policy issued by the Plaintiff, effective 11:59 PM on November 15, 2015. All policy terms and conditions and legal requirements with regard to the cancellation of the policy were satisfied, and the policy was effectively cancelled at said date and time.

21.     Upon information and belief, the policy of insurance issued by Defendant Hanover (policy number ZZ6 A783040 00) commenced on November 15, 2015 at 12:01 AM with effective dates November 15, 2015 through November 15, 2016.

22.     The Hanover policy provided commercial property coverage for the property located at 8966 West Marlboro Road, Farmville, North Carolina, with respect to loss or damage commencing during the aforementioned policy provision at the subject property.

23.     Upon information and belief, the policy issued by Defendant Hanover was in full force and effect at the time that one of the silo structures located at the subject property caught fire and burned on November 27, 2015.

24.     Upon information and belief, Natural Blend commenced operation of the sweet potato dehydration process in October of 2014.  During this process, the raw sweet potatoes are, upon information and belief, cut into chunks or cubes.  These are then dehydrated and reduced to a rough, grainy powder.  The powder is then compressed into dried pellets (approximately the size of a quarter) which are then stored in the large silo structures constructed at the Natural Blend facility.

25.     Upon information and belief, the goal of the dehydration process is to reduce moisture content in the finished product to a level of 7-10% to prevent risk of bacterial contamination during storage.  While moisture content is monitored during the dehydration process, no process is in place to monitor moisture content of the finished product within the storage silos.

26.     Upon information and belief, the optimal operation of the silo storage system would involve minimal storage time for the finished product to prevent compaction,

decomposition, or other modification of the state of the dehydrated sweet potato pellets due to elevated moisture content, heat, humidity or otherwise.

27.     Upon information and belief, the dehydrated sweet potato pellets were being stored by Natural Blend in the large storage silos containing in excess of one million tons of product for periods of at least six months or longer.

28.     Upon information and belief, Natural Blend began removing the stored product from the silos in the early part of 2015 for sale and distribution to Big Heart Brands, Del Monte, and/or other entities.

29.     In March of 2015, Natural Blend detected problems with the removal of the finished sweet potato pellet products from one or both silos.  An event known as "rat holing" was occurring wherein product was removed from the middle of the silo, however, the remaining product adhered to the walls of the silo in large clumps preventing free flow of product from the storage silo.  The weight and pressure created by the product left in the storage silo caused, among other things, buckling and denting of the silo walls which was observed by representatives from Natural Blend.

30.     Upon information and belief, Natural Blend contacted Tank Connection Affiliate Group, the company that originally installed and tested the silos, after observing such evidence of rat holing, particularly in silo #2, and experiencing difficulty in removing finished product from the silo.

31.     At approximately the same time, representatives from Big Heart Brands/Del Monte noted and advised Natural Blend that there was a significant difference in the material properties of the product removed from the silos in the spring and summer of 2015 and that of the product when original tested in the fall of 2014.

32.     Upon information and belief, the manufacturer of the silo equipment made recommendations to Natural Blend concerning the retention of an engineer and/or a vendor to investigate the possible cause of the problems and techniques for clearing the silo so that product could be removed as needed.

33.     Natural Blend ultimately contracted with a company named Silo Source to provide services associated with unclogging the silo and assisting in the removal of the finished product from the silo.

34.     Upon information and belief, Natural Blend entered into a contract with Silo Source for the provision of these services, and Silo Source mobilized a work crew led by Ramey Hart and Thomas Nicholson to begin work on or about June 1, 2015.

35.     Upon information and belief, large "chunks" or "bridges" of the finished sweet potato products were detected within the silo. These conditions were blocking the free flow of material from the silo.

36.     Initially, representatives from Silo Source attempted to remove the blockages through drilling the material from both the top and the bottom of the silo. The crew continued working for several weeks.

37.     By approximately July 14, 2015, it was reported that materials being removed from the silo had a noxious odor and that as a result, several crew members for Silo Source were becoming dizzy. In addition, carbon monoxide gas levels were determined to be high within the silos, and crews had to cease working.

38.     On or about July 16, 2015, product removed from the silo was observed to be blackened and appeared to look moldy, and reportedly, scraps of product were placed in storage bins which caught on fire when exposed to open air.

39.     By July 17, 2015, carbon monoxide and hydrogen sulfide levels were too high for crews to be keep working in the silo and it was determined that gas masks or other protective equipment was necessary to continue working in the silo.  Work had to be stopped for several days so that appropriate equipment could be ordered.

40.     Upon information and belief, it was reported by representatives from Silo Source to Natural Blend on or about July 31, 2015 that gas readings inside the silo were getting "dangerously bad" and Michael Curry, President of Silo Source, recommended that Natural Blend contact Tyco Williams, a company that specialized in putting out silo fires.  Silo Source pulled its work crew off of the site and left the facility.

41.     On or about August 3, 2015, Silo Source recorded data indicating that they were informed by Natural Blend that Natural Blend was not going to hire Tyco, but rather, was going to "close up the silo and see if the fire goes out."

42.     Information provided by Natural Blend suggests that Silo Source requested permission to drill additional holes through the body of the silo, however, permission was not granted by the manufacturer, and Silo Source left the job site.

43.     Subsequent to the departure of Silo Source, Natural Blend contracted with a second vendor known as Mole Masters at some time after August 31, 2015.

44.     Upon initiating their work, representatives from Mole Masters noted that the previous work crew left numerous tools, personal items and drilling equipment behind, and it was noted that the previous work crew left the job site quickly.

45.     Upon commencing its work, Mole Masters was unable to work from the top of the silo due to high carbon monoxide levels and noxious odor coming from the material in the silo.

46.     Upon information and belief, Mole Masters was given authorization by Tank Connections to create additional openings in the cone of the silo in an attempt to dislodge further material.  As a result, warm, charred chunks of sweet potato pellets were removed from the silo.

47.     On or about November 9, 2015, Mole Masters' representatives at the site reported that they observed cracking around the bolts that hold the panels of the silo together.  Due to this structural instability, they immediately stopped work and brought this condition to the attention of Natural Blend.  Mole Masters ultimately collected its equipment and left the job site on November 9, 2015.

48.     On November 15, 2015, commercial property insurance coverage issued by America Select Insurance Company was cancelled at the request of Natural Blend. None of the conditions or occurrences referenced hereinabove were, at any time, reported to Plaintiff or its representatives or agents.

49.     Upon information and belief, commercial property insurance coverage for the subject property with The Hanover American Insurance Company commenced on November 15, 2015.

50.     On November 27, 2015, a fire erupted in silo #2 at the subject property.  The fire ultimately destroyed the structure and the finished stock contained therein.

51.     Subsequent to the fire in question, Natural Blend made a claim against The Hanover for recovery under the commercial property policy issued by The Hanover that was in effect at the time of the loss.

52.     On or about August 1, 2016, The Hanover denied Natural Blend's claims under the subject policy on the grounds that the loss in question did not occur within The Hanover's policy period.  Further, The Hanover contended that Natural Blend had violated the policy

commercial property conditions by concealing or misrepresenting material facts concerning the property or coverage under the policy.

53.     Subsequently, Natural Blend made a claim for recovery under the policy issued by the Plaintiff.

54.     Thereafter, American Select Insurance Company initiated an investigation of the subject claim and communicated with counsel for Natural Blend to secure examinations under oath of representatives of Natural Blend with information pertinent to the investigation of the claim.

55.     On October 4, 2016, counsel for American Select Insurance Company corresponded with counsel for Natural Blend scheduling the examination under oath of Bobby Ham and requesting the production of numerous documents material to the investigation of the claim.  A copy of said correspondence is attached as Exhibit "B".

56.     At the request of counsel for Natural Blend, the examination of Mr. Ham was scheduled for October 18, 2016, and conducted on that date.  In addition, Natural Blend made Dennis Thomas, the plant manager at the Natural Blend facility, available for an examination under oath on that date based upon Natural Blend's assertions that Mr. Thomas possessed information pertinent to the investigation of the claim.

57.     While Natural Blend timely produced some documentation responsive to the request made prior to the examination under oath, other documentation material to the investigation was not produced in a timely manner in accordance with the governing policy terms and conditions.

58.     In addition, statements made by Natural Blend representatives during the course of the examination under oath contradicted information provided by Natural Blend to The Hanover during the course of its investigation of the initial claim.

59.     As a result of the failure to produce documentation requested and the fact that false material statements had potentially been made with regard to the presentation of the claim, a reservation of rights letter was sent by American Select Insurance Company/Westfield Insurance Group ("Westfield") to Natural Blend on November 11, 2016.  A copy of said correspondence is attached hereto as Exhibit "C".

60.     A second copy of the reservation of rights letter was delivered to counsel for Natural Blend on or about January 12, 2017.  That correspondence also clarified the nature and extent of the outstanding document production request.  A copy of the correspondence is attached hereto as Exhibit "D".

61.     On or about February 21, 2017, Natural Blend made a partial document production to counsel for Westfield pursuant to the outstanding request.

62.     The February 2017 document production response was incomplete, and on May 1, 2017, Natural Blend was notified, via correspondence to its counsel, with respect to the deficiencies in the request and the failure of Natural Blend to produce a signed sworn proof of loss as requested under the terms and conditions of the policy.  A copy of this correspondence is attached hereto as Exhibit "E".

63.     On or about May 29, 2017, Natural Blend made a subsequent document production to counsel for American Select/Westfield, however, the subsequent production failed to achieve full compliance with the initial document production request and a supplemental document production request issued to Natural Blend.

64.     On June 29, 2017, counsel for American Select/Westfield corresponded with counsel for Natural Blend documenting deficiencies in the document production and requesting that the same be supplemented.  A copy of that correspondence is attached hereto Exhibit "F".

65.     On or about August 23, 2017, Natural Blend produced additional documents through counsel, however, the production of documents remained incomplete and failed to comply with the applicable terms and conditions of the policy.

66.     By letter dated September 1, 2017, counsel of Natural Blend was informed that document production was incomplete and that American Select/Westfield specifically reserved its rights with respect to the application of the policy provisions.  A copy of said correspondence is attached as Exhibit "G".

67.     While attempting to obtain requested documentation from Natural Blend, American Select also attempted to communicate with representatives from Silo Source and Mole Masters to obtain documentation concerning the job at the subject property.  In response to these efforts, extensive documentation was obtained through Silo Source, however, Mole Masters refused to the majority of its job file.

68.     On September 20, 2017, a request was made of Natural Blend to obtain and produce the Mole Masters job file.  To date, no job file has been produced a copy of said correspondence is attached as Exhibit "H".

69.     At the conclusion of the investigation conducted by American Select Insurance Company, there remain unresolved issues and questions of fact concerning coverage under the policy of insurance issued by American Select to Natural Blend with respect to the above-referenced loss.  Accordingly, American Select requests that the Court issue judgment declaring

the rights and obligations of the parties with regard to the following justiciable issues which have

arisen under the terms of the policy including, but not limited to:

A. Whether the events in question constitute a covered loss under the policy of insurance issued by Plaintiff to Defendant Natural Blend and/or the policy issued by Defendant The Hanover to Natural Blend;

B. Whether the occurrence giving rise to this loss will have deemed to have transpired within the coverage period of the policy issued by the Plaintiff or Defendant The Hanover;

C. In the event that coverages afforded under the policy issued by American Select, whether Natural Blend is entitled to loss of business income associated with the destruction of "finished stock";

D. Whether Natural Blend failed to comply with the terms and conditions of the American Select policy by failing to provide prompt notice of a physical loss to the subject property;

E. Whether Natural Blend has violated the policy terms and conditions by failing to take all reasonable steps to protect the subject property from further loss or damage after the occurrence of the loss;

F. Whether American Select has been prejudiced by the conduct of Natural Blend;

G. Whether Natural Blend has failed to cooperate with Plaintiff in the investigation of the subject loss by timely submitting a proof of loss and fully complying with all requests for the production of documents material to the investigation of the claim;

H. Whether Natural Blend, by and through its agents, employees, or owners has intentionally concealed or misrepresented any material fact concerning the covered property or coverage under the applicable policy; and

I. Whether coverage for the subject loss exists under the policy issued by the Plaintiff, the Defendant Hanover, both, or neither.

## COUNT I

70. Plaintiff hereby realleges and incorporates by reference their paragraphs 1 through

69 of their Complaint.

71. Both the Plaintiff and Defendant The Hanover issued commercial property insurance policies to Defendant Natural Blend with respect to the storage silos located at 8966 West Marlboro Road, Farmville, North Carolina.

72. Upon information and belief, both policies provided coverage for physical loss or damage to covered property, including, but not limited to, loss resulting from fire.

73. Upon information and belief, both policies provided coverage for losses occurring during their respective policy periods.

74. The subject fire loss for which Defendant Natural Blend seeks recovery under the terms of the Plaintiff's policy occurred on November 27, 2015.

75. At the time of the subject loss, the policy of insurance issued by the Plaintiff was no longer in effect, having been cancelled by Defendant Natural Blend effective 11:59 PM November 15, 2015.

76. At the time of the subject loss, the policy issued by Defendant The Hanover was, upon information and belief, in full force and effect. Plaintiff and Defendant The Hanover both contend that the loss in question did not occur within their respective coverage period.

77. There remains an actual and justiciable controversy as between the parties as to the date of the occurrence of a potentially covered loss at the subject property arising under one or both of the policies of insurance.

## COUNT II

78. Plaintiff hereby realleges and incorporates by reference their paragraphs 1 through 77 of their Complaint

79. The policy of insurance issued by the Plaintiff to the Defendant Natural Blend contains numerous policy terms and conditions with respect to both the Building and Personal

Property Coverage form (CP 00 10 06 07) and the Business Income and Extra Expense Coverage

form (CP 00 30 06 07).

80. The Building and Personal Property Coverage form provides as follows:

**C.  Compliance with Policy Conditions**

Both the building and personal property coverage form and the business income (and extra expense) coverage form imposed numerous conditions in the event of a loss.  With respect to the subject loss, those conditions are as follows:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

**E.  Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**3.  Duties In The Event Of Loss Or Damage**

a. You must see that the following are done in the event of loss or damage to Covered Property:

(1) Notify the police if a law may have been broken.

(2) Give us prompt notice of the loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4) Take all reasonable steps to protect the Covered from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss.  Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5) At our request, give us complete inventories of the damaged and undamaged property.        Include quantities, costs, values and amount of loss claimed.

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7) Send us a signed, sworn proof of loss containing the

information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

 **(8)** Cooperate with us in the investigation or settlement of the claim.

See CP 00 10 06 07 (pp 9-10 of 15).

81. The Business Income and Extra Expense Coverage form contains the following provisions:

**C.** **Loss Conditions**
 **2.** **Duties In The Event Of Loss**
  **a.** You must see that the following are done in the event of loss:

  **(2)** Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

  **(3)** As soon as possible, give us a description of how, when, and where the direct physical loss or damage occurred.

  **(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

  **(5)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

   Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

  **(6)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

  **(7)** Cooperate with us in the investigation or settlement

of the claim.

**(8)** If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

See CP 00 30 06 07 (p. 5 of 9)

82. More specifically, the North Carolina endorsement to the policy (CP 01 18 02 14) provides as follows:

**B.** The **Legal Action Against Us** Condition is replaced by the following:
**Legal Action Against Us**
No one may bring a legal action against us under this Coverage Part unless:
1. There has been full compliance with all of the terms of this Coverage Part; and
2. The action is brought within three years after the date on which the direct physical loss or damage occurred.

83. The foregoing policy provisions require that, in order to pursue coverage under either form, the claimant must promptly provide notice of any loss or damage, describe how and when the damage to covered property and describe how, when and where the loss or damage occurred.

84. In the present case, the documentation generated through the investigation, including documents prepared by the Defendant Natural Blend, suggests that Natural Blend may have been aware of a fire or potential fire in silo #2 as early as July 14, 2015, or sooner.

85. At no time prior to the eruption of a fire in the covered property on November 27, 2015, did Defendant Natural Blend report to the Plaintiff the existence of a fire at the covered property or any potential loss or damage to the covered property.

86. The failure to provide notice of a potential loss or claim was prejudicial to the Plaintiff in that, had such notice been provided, steps could have been taken to mitigate or

eliminated the risk of significant loss or damage to the covered property by undertaking measures to extinguish any existing fire.

87.     The failure of Defendant Natural Blend to report the existence of conditions which constituted a loss under the subject policy is a violation of the terms and conditions of the subject policy.

88.     There exists an actual and justiciable controversy as to between the parties as to whether Defendant Natural Blend's failure to report an occurrence or loss or the existence of conditions which might potentially lead to damage to covered property constitutes a violation of the terms and conditions of the policy, and thereby, limits Defendant Natural Blend's ability to recover under the terms of the policy in the event of a covered loss.

## COUNT III

89.     Plaintiff hereby realleges and incorporates by reference their paragraphs 1 through 88 of their Complaint.

90.     The aforementioned policy provisions also placed a duty on the insured to take all reasonable steps to protect the covered property from further damage in the event of a covered loss.

91.     Documentation generated through the investigation of the subject claim suggests that representatives from the Defendant Natural Blend may have been aware of the existence of a fire in silo #2 of the covered property as early as July 14, 2015 or sooner.

92.     To the extent representatives from the Defendant Natural Blend have such knowledge, they were under a duty to take reasonable steps to protect covered property from further loss.

93.     Upon information and belief, an active fire or conditions conducive to a potential fire could have been mitigated and/or eliminated at a fairly minimal and reasonable expense had Defendant Natural Blend taken steps to do so.  Upon information and belief, the subject silo could have been sealed and filled with an inert gas, such as nitrogen, to extinguish the fire that may have existed within.

94.     Rather than take such reasonable and inexpensive steps, representatives from the Defendant Natural Blend continued to attempt to drill into the area where it was known or suspected that a smoldering fire existed, thereby introducing oxygen to the area and greatly increasing the risk for significant further damage to covered property.

95.     There exists an actual and justiciable controversy as between the parties as to whether the actions of the Defendant Natural Blend constitute a breach of the foregoing policy provisions and limit or eliminate the right of Natural Blend to recover under the terms of the subject policy in the event this is determined to be a covered loss.

## COUNT IV

96.     Plaintiff hereby realleges and incorporates by reference their paragraphs 1 through 95 of their Complaint.

97.     The aforementioned policy terms and conditions placed upon the Defendant Natural Blend a duty to cooperate with Plaintiff in the investigation or settlement of any claim.

98.     Pursuant to these policy provisions, Defendant Natural Blend was asked to submit a signed sworn proof of loss within 60 days of the request.

99.    In addition, repeated requests were made to Defendant Natural Blend to produce books and records relevant to the investigation of the loss, cause of the loss, the date of the occurrence of the loss, and the extent of the loss.

100.    While Defendant Natural Blend produced some documents in response to repeated requests, the document production was and remains, upon information and belief, incomplete.  Further, Natural Blend failed to produce a signed sworn proof of loss until May of 2017 and did not submit a completed proof of loss until September of 2017.

101.    Plaintiff has been prejudiced by the conduct of Defendant Natural Blend in that it is has been unable to completely and fully investigate the cause, date of occurrence, and extent of the subject loss, assuming said loss is determined to be a covered loss under the subject policy.

102.    There exists an actual and justiciable controversy as between the parties as to whether the conduct of Defendant Natural Blend was in violation of the terms and conditions of the policy and limits or eliminates the ability of Defendant Natural Blend to recover any proceeds under the policy in the event said loss is determined to be a covered loss.

<u>**COUNT V**</u>

103.    Plaintiff hereby realleges and incorporates by reference their paragraphs 1 through 102 of their Complaint.

104.    The commercial property coverage at issue contains certain policy terms and conditions applicable to all claims under the policy as set forth in form CP 00 90 07 88.

105.    The policy provides as follows:

**D.    <u>FRAUD AND/OR MATERIAL MISREPRESENTATION</u>**

The commercial property coverage at issue contains common conditions applicable to all claims for coverage under the policy as set forth in form CP 00 90 07 88.  The pertinent policy conditions are as follows:

## COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

**A.    CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time.  It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1.    This Coverage Part;
2.    The Covered Property;
3.    Your interest in the Covered Property; or
4.    A claim under this Coverage Part.

106.    In conjunction with its investigation of the subject loss, Plaintiff conducted examinations under oath of Bobby G. Ham and Dennis Thomas as representatives of Defendant Natural Blend.

107.    Upon information and belief, statements made by Ham and Thomas during the course during these examinations under oath contradicted information contained in documentation produced by Defendant Natural Blend to Defendant Hanover and communications between Defendant Natural Blend and Silo Source.  Plaintiff ultimately obtained these materials during the course of its investigation.

108.    Ham and Thomas specifically denied any knowledge of any burned or smoldering product being removed from the silo during the summer of 2015.  Further, both gentlemen denied any specific knowledge of being informed about the existence of a fire or the possible existence of conditions conducive to a fire within the silo at any time prior to November 27, 2015.

109.    Upon information and belief, statements under oath made by Ham and Thomas contradict information documented in records maintained by Natural Blend which were provided to Defendant Hanover during the course of its investigation.  To the extent contradictory

statements or untruthful statements were made by Ham and/or Thomas as representatives of Defendant Natural Blend, said conduct may constitute a breach of the above-referenced commercial property conditions concerning concealment, misrepresentation or fraud.

110.    There exists a justiciable controversy as between the parties as to whether the conduct of Defendant Natural Blend, through its owners, agents, and/or employees, is in violation of the above-referenced policy provisions and voids or limits coverage available under the policy in the event said loss is determined to be a covered loss.

## COUNT VI

111.    Plaintiff hereby realleges and incorporates by reference their paragraphs 1 through 110 of their Complaint.

112.    In the event that said loss is determined to be a covered loss, the policy in question may provide certain coverage for business income and extra expense under policy form CP 00 30 06 07.

113.    That coverage form contains an exclusion for loss or damage resulting from the damage or destruction of "finished stock".   Specifically, the policy provides as follows in coverage form CP 10 30 06 07:

However, that form provides as follows with regard to:

**B.      Exclusions**
**1.**       We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
**4.       Special Exclusions**
The following provisions apply only to the specified Coverage Forms.
**a.       Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage    Form,    Or Extra Expense Coverage Form**
We will not pay for:
**(1)**      Any loss caused by or resulting from:

**(a)**    Damage or destruction of "finished stock"; or

**(b)**    The time required to reproduce "finished stock".

114.    Specifically, the policy defines the term "finished stock" as follows in commercial property form CP 00 30 06 07:

**F.    Definitions**

1.    "Finished Stock" means stock you have manufactured. "Finished Stock" also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations.

"Finished Stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this Coverage Part.

115.    Upon information and belief, the dried and dehydrated sweet potato pellets manufactured by Defendant Natural Blend constitute "finished stock" as defined by the policy.

116.    Upon information and belief, the finished stock was simply being stored at the covered property prior to its sale and distribution to the final customer.

117.    To the extent the events described herein constitute a covered loss, there remains an actual and justiciable controversy as between the parties as to whether the exclusionary language limiting or eliminating recovery for loss of business income or extra expense related to destruction of "finished stock".

WHEREFORE, the Plaintiff respectfully prays that the Court order as follows:

1.    That the rights and obligations as to the parties with respect to the interpretation and application of the various policies of insurance with regard to the subject loss be determined by the Court;

2.    That the Court determine that the policy of commercial property insurance issued by the Plaintiff does not provide coverage for the subject loss;

3.      That, in the event that Plaintiff's policy does provide coverage for the subject loss, coverage be limited in a manner consistent with the terms, conditions and duties under the policy issued to the Defendant Natural Blend;

4.      That the Court determine that any loss in question occurred outside of the policy period of the commercial property insurance policy issued by the Plaintiff;

5.      That all issues of fact be tried by a jury; and

6.      That the Plaintiff have any other and further relief that the Court may deem just and proper.

This the 22nd day of December, 2017.


/s/ John T. Jeffries
JOHN T. JEFFRIES
Bar No:  22134
Attorney for Plaintiff
McAngus Goudelock & Courie, PLLC
Post Office Box 30307
Charlotte, North Carolina 28230
(704) 643-6303
jjeffries@mgclaw.com