IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
NO. 4:17-CV-178-BR

| | |
|---|---|
| AMERICAN SELECT INSURANCE COMPANY, <br>　　　　Plaintiff, <br><br>　　v. <br><br>NATURAL BLEND VEGETABLE DEHYDRATION, LLC and THE HANOVER AMERICAN INSURANCE COMPANY, <br>　　　　Defendants. <br><br>NATURAL BLEND VEGETABLE DEHYDRATION, LLC, <br>　　　　Crossclaim Plaintiff, <br><br>　　v. <br><br>THE HANOVER AMERICAN INSURANCE COMPANY, <br>　　　　Crossclaim Defendant. <br><br>and <br><br>NATURAL BLEND VEGETABLE DEHYDRATION, LLC, <br>　　　　Third-Party Plaintiff, <br><br>　　v. <br><br>INDUSTRIAL SILOSOURCE, Inc., MOLE-MASTER SERVICES CORPORATION, MANRY-RAWLS, LLC, and SIA GROUP, INC., <br>　　　　Third-Party Defendants. | ORDER |

This matter is before the court on plaintiff and counterclaim defendant American Select

Insurance Company's ("American Select") and defendant and cross-claim defendant Hanover

American Insurance Company's ("Hanover") motions to dismiss, in part, defendant and counterclaim plaintiff Natural Blend Vegetable Dehydration, LLC's ("Natural Blend") counterclaims and cross-claims. (DE ## 30, 32.) Natural Blend filed a response to both motions to dismiss. (DE ## 59, 60.) Hanover then filed a reply. (DE # 61.)

Hanover also filed a motion to strike or, in the alternative, sever Natural Blend's third-party complaint against Industrial SiloSource, Inc. ("SiloSource"), Mole-Master Services Corporation ("Mole-Master"), Manry-Rawls, LLC ("Manry-Rawls"), and SIA Group, Inc. ("SIA"). (DE # 56.) Mole-Master filed a memorandum in support of that motion. (DE # 64.) Natural Blend filed a response in opposition to the motion. (DE # 62.) Hanover then filed a reply. (DE # 65.) These motions are ripe for disposition.

## I. BACKGROUND

Natural Blend owns a facility ("Facility") that dehydrates, stores, and ships sweet potato products. (DE # 1, at 3.) The Facility included "an office/processing plant" and "two large multi-story steel silos" for storage of the finished product. (Id. at 4.) Natural Blend secured commercial property insurance for the Facility from American Select, effective 26 February 2015 through 26 February 2016. (Id.) Natural Blend cancelled this policy on 15 November 2015 and replaced it with a Hanover policy, effective 15 November 2015 through 15 November 2016. (Id. at 4–5; DE # 16, at 3.)

In early 2015, Natural Blend experiencing difficulty removing the product from one or both silos—the pellets were not flowing freely from the silo into the screw conveyor. (DE # 1, at 6; DE # 16, at 4.) Natural Blend sought assistance with the problem from SiloSource, which mobilized a crew to begin work around 1 June 2015. (DE # 1, at 7; DE # 16, at 5.) American Select contends that by 14 July 2015 materials from the silos had a noxious odor and carbon

monoxide gas levels were such that crews were forced to cease their efforts. (DE # 1, at 7.) American Select also contends that on or around 16 July 2015, product from the silo appeared blackened and moldy, and that scraps caught fire when exposed to open air. (Id.) In the following weeks, the carbon monoxide levels in the silo continued to rise, requiring breathing equipment for the crews to continue work. (DE # 1, at 8; DE # 16, at 5.) SiloSource left the job site in August 2015. (DE # 1, at 8; DE # 16, at 6.) Natural Blend contends that the roof door and some probe ports of the west silo were left partially open and/or uncovered, causing rain to leak inside onto the product. (DE # 16, at 6.) After SiloSource's departure, Natural Blend retained Mole-Master to continue the efforts to unclog the west silo. (DE # 1, at 8; DE # 16, at 6.)

Mole-Master initiated work at the Facility some time after 31 August 2015. (DE # 1, at 8.) Natural Blend alleges that two different Mole-Master crews attempted work on the project. (DE # 16, at 6.) Around 10 November 2015, Natural Blend claims Mole-Master left the jobsite to brainstorm ideas and on 17 November 2015, after inspecting the silo, told Natural Blend that they would return with a solution. (Id. at 6–7.) On 27 November 2015, a plant manager for Natural Blend allegedly discovered the product in the west silo was on fire. (DE # 16, at 7.) Ultimately, the fire destroyed both the finished stock and the structure itself. (Id.; DE # 1, at 9.)

Following the fire, Natural Blend filed a claim against the Hanover commercial property policy. (DE # 1, at 9; DE # 16, at 2.) Hanover denied this claim. (DE # 1, at 9; DE # 16, at 2.) Natural Blend then filed a claim under the American Select policy. (DE # 1, at 10; DE # 16, at 2.) American Select informed Natural Blend of its position that the loss was not covered under its policy. (DE # 16, at 22; DE # 16-4.) Thereafter, American Select initiated this action seeking a declaratory judgment as "to the applicability and interpretation" of the two insurance contracts. (DE # 1, at 1.) Natural Blend alleges factual disputes and joins in American Select's request for

3

a resolution of the rights and obligations of the parties. (DE # 16, at 16, 39.) Natural Blend also filed counterclaims against American Select and cross-claims against Hanover for breach of contract, negligence and/or negligent misrepresentation, bad faith, unfair and deceptive trade practices, and breach of the covenant of good faith and fair dealing. (DE # 16, at 21–32.) Additionally, Natural Blend filed third-party claims against Manry-Rawls and SIA for negligence and/or negligent misrepresentation, against SiloSource for breach of contract and negligence, and against Mole-Master for negligence. (Id. at 33–38.)

## II. DISCUSSION

### A.   Motions to Dismiss

American Select and Hanover move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Natural Blend's claims of negligence and/or negligent misrepresentation, bad faith, unfair and deceptive trade practices, and breach of covenant of good faith and fair dealing. To survive a 12(b)(6) motion to dismiss, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level,'" and thus nudge the claim from conceivable to plausible. Vitol, S.A. v. Primerose Shipping Co., 708 F.3d 527, 543 (4th Cir. 2013) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plaintiff must "demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" Id. (citations omitted). Mere recitation of the elements of a claim is insufficient. Id. (citations omitted). Instead, the plaintiff must plead facts, which when accepted as true, show (rather than simply allege) that the plaintiff is entitled to relief. Id. (citations omitted).

#### 1. Negligence and/or Negligent Misrepresentation

American Select contends Natural Blend's negligence-based claims should be dismissed pursuant to the Economic Loss Rule. (DE # 31, at 6.) Similarly, Hanover contends the claims

4

should be dismissed because they are not "sufficiently distinct" from the breach of contract claim. (DE # 33, at 5–6.) Hanover also contends that the alleged failure to obtain and act upon accurate pre-application information did not result in damage to Natural Blend, and thus, the claims should be dismissed for that reason also. (Id. at 7.)

The Economic Loss Rule "'prohibits recovery for purely economic loss in tort when a contract . . . operates to allocate risk.'" Severn Peanut Co., Inc. v. Indus. Fumigant Co., 807 F.3d 88, 94 (4th Cir. 2015) (quoting Kelly v. Georgia, Pac. LLC, 671 F. Supp.2d 785, 791 (E.D.N.C. 2009)). Thus, "[o]rdinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor." Ellis v. Louisiana-Pacific Corp., 699 F.3d 778, 782 (4th Cir. 2012) (citation omitted). This is true even when the failure to perform the terms of the contract "was due to negligent or intentional conduct of that party . . . ." Spillman v. Am. Homes of Mocksville, Inc., 422 S.E.2d 740, 741 (N.C. Ct. App. 1992). "'It is the law of contract, not tort law, 'which defines the obligations and remedies of the parties in such a situation.'" Legacy Data Access, Inc. v. Cadrillion, LLC, 889 F.3d 158, 164 (4th Cir. 2018) (quoting Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 346 (4th Cir. 1998)). Accordingly, tort claims are limited to those "which are identifiable and distinct from the primary breach of contract claim." Legacy Data Access, 886 F.3d at 164 (internal quotation marks omitted); see also Strum v. Exxon Co., U.S.A., 15 F.3d 327, 333 (4th Cir. 1994) (noting it is "unlikely that an independent tort could arise in the course of contractual performance, since those sorts of claims are most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations").

In its negligence and/or negligent misrepresentation claim, Natural Blend alleges that both American Select and Hanover owed a duty to "exercise reasonable care or competence in

5

obtaining or communicating information regarding *insurance coverage of claims and claims existing under the policies of insurance issued*" by both. (DE # 16, at 26.) Natural Blend claims it is entitled to money damages as a result of the breach of this duty. (Id. at 27–28.) In its responses to the motions at bar, Natural Blend argues that aggravating conduct, beyond mere breach of contract, entitles it to relief under tort law. (DE # 59, at 6; DE # 60, at 5.) While tortious conduct, "accompanied by sufficient aggravating circumstances," may survive the economic loss rule, the "[t]ortious conduct must be 'identifiable' and 'distinct from the primary breach of contract claim.'" ACS Partners, LLC v. Americon Group, Inc., No. 3:09-CV-464-RJC-DSC, 2010 U.S. Dist. LEXIS 19907, at *19 (W.D.N.C. 2010) (citing Broussard v. Meineke Disc. Muffler Shops, 155 F.3d 331 (4th Cir. 1998)).

Here, Natural Blend's arguments regarding the alleged aggravating conduct, all relate to or stem from the insurance contracts. It contends that its unfair and deceptive trade practices claim presents a question of fact regarding aggravating conduct; the insurance companies "willfully contravened the procedures under the policy;" and the insurance companies "misrepresented the facts and terms of [their policies] in [their] denial[s] of the claim, refused to reasonably investigate the claim, willfully and repeatedly failed to provide the requisite forms pursuant to its contract, and breached [their] duties by and through [their] agents."[1] (DE # 59, at 6–8; DE # 60, 5–7.) These bases are the same as those asserted in support of the breach of contract claims. In fact, at one point Natural Blend pleads the claims together: "[American

---

[1] These allegations are contained in Natural Blend's responses in opposition to the motions to dismiss its claims. The parallel allegations in the complaint do not allege "willful" conduct. Rather, the allegations in the complaint allege American Select and Hanover "knew or should have known" Natural Blend would rely on their representations, failed to ensure adequate procedures were in effect, and "negligently or intentionally misrepresent[ed]" information. (DE # 16, at 27–28.)

6

Select] and/or Hanover further breached their contracts with Natural Blend and/or acted negligently by the following actions: . . ." (DE # 16, at 27.)

Natural Blend's negligence claims are not "identifiable and distinct" from its breach of contract claims against American Select and Hanover. In addition to relying upon the same bases to support these claims and the breach of contract claims, Natural Blend acknowledges its relationship with American Select and Hanover is rooted in contract and contends the "damage suffered . . . alleged herein is included in the casualty terms of its policy." (Id. at 22.) The negligence claims arise solely out of the parties' rights and obligations under the respective policies, and not only are the sole damages economic losses, but Natural Blend contends they are covered under the terms of the policies. (Id.) Comparably, American Insurance's and Hanover's alleged misrepresentations were regarding the terms of the insurance coverage and policies. To the extent Natural Blend attempts to assert a claim based upon pre-contractual conduct, it has failed to establish any resulting harm outside of that covered by the contracts or plead facts which "show" it is entitled to relief. (See DE # 16, at 28 (alleging a failure to ensure accuracy of pre-application information).) Natural Blend has failed to establish aggravating circumstances beyond its mere breach of contract claims. Despite alleging in its brief that the parties' "willfully contravened the procedures under the policy," Natural Blend alleges no facts which would support this assertion. (DE # 59, at 8.) Accordingly, Natural Blend has failed to state a claim for either negligence or negligent misrepresentation. American Select's and Hanover's motions to dismiss these claims will be granted.

### 2. Bad Faith and Breach of Covenant of Good Faith and Fair Dealing

Natural Blend alleges bad faith and breach of good faith in two separate counts. A bad faith claim based on an insurance company's refusal to settle, like Natural Blend alleges here,

requires three elements: "(1) a refusal to pay after recognition of a valid claim, (2) bad faith, and (3) aggravating or outrageous conduct (for punitive damages)." Cleveland Const., Inc. v. Fireman's Fund Ins. Co., 819 F. Supp.2d 477, 483 (W.D.N.C. 2011) (citing Lovell v. Nationwide Mut. Ins. Co., 424 S.E.2d 181, 184 (N.C. Ct. App. 1993)). "Bad faith means 'not based on honest disagreement or innocent mistake.'" Id. (quoting Dailey v. Integon Gen. Ins. Corp., 331 S.E.2d 148 (N.C. Ct. App. 1993)). Thus, if a refusal to settle is due to true disagreement or mistake, the insurer has not acted in bad faith. See Topsail Reef Homeowners Ass'n v. Zurich Specialties London, LTD, 11 F. App'x 225 (4th Cir. 2001) (noting "when an insurer denies a claim because of a legitimate, 'honest disagreement' as to the validity of the claim . . . the plaintiff cannot establish bad faith or any tortious conduct") (citation omitted).

Neither insurance company has recognized a valid claim and all parties admit factual disputes regarding coverage remain. (DE # 31, at 14–15; DE # 33, at 13–14; DE # 16, at 16.) Both American Select and Hanover expressly denied liability for the claim, each contending that its policy was inapplicable to the loss. (See DE # 16, at 22, 26.) Thereafter, American Select instituted this action seeking a determination of who is liable for Natural Blend's damages. (DE # 1, at 12–13.) Further, Natural Blend itself admits that liability is unclear between American Select and Hanover and joins in the request for resolution of "any issues and questions of fact asserted by [American Select] as alleged in paragraph 69."[2] (DE # 16, at 16, 39.) Throughout its pleadings and as a result of the factual disputes, Natural Blend alleges "[American Select] and/or Hanover" are responsible for the loss. (See, e.g. DE # 16, at 28–29.) Natural Blend contends American Select and Hanover should have paid its claim and "then resolve[d] between them the allocation of the amount paid." (Id. at 30.) Thus, American Select, Hanover, and Natural Blend

---

[2] Paragraph 69 of American Select's complaint requests that the court resolve nine issues, including whether the loss is covered by either party, if so, which party and whether Natural Blend complied with American Select's policy.

8

are all in "honest disagreement" about liability for the claim. Accordingly, there has been no recognition of a valid claim and Natural Blend has failed to allege any facts that would support a finding of bad faith.

Natural Blend separately claims that American Select and Hanover breached the covenant of good faith and fair dealing. (DE # 16, at 31–32.) "The duty of good faith and fair dealing required to sustain a common law bad faith claim is a concept of insurance law and attaches because of the special relationship between insureds and insurers." Cincinnati Ins. Co. v. Centech Bldg. Corp., 286 F. Supp. 2d 669, 690 (M.D.N.C. 2003). In addition to the allegations espoused in support of its bad faith claim, Natural Blend adds that American Select and Hanover "aggressively competed against each other and others to secure the insurance business of Natural Blend . . . ." (DE # 16, at 31–32.) As discussed above, American Select and Hanover did not act in bad faith as there remains a genuine disagreement about who is liable for the damage at issue and Natural Blend has failed to plead facts establishing aggravating or outrageous conduct on behalf of the insurers. Therefore, American Select's and Hanover's motions to dismiss Natural Blend's bad faith claim and breach of covenant of good faith and fair dealing claim will be granted.

### 3. Unfair and Deceptive Trade Practices

Natural Blend contends that American Select and Hanover "violate[d] one or more of the [insurance] practices prohibited under NCGS § 58-63-15(11)." (Id. at 31.) This assertion relies on the same acts alleged in Natural Blend's other counts. (See id.) In its response in opposition to American Select's motion to dismiss, Natural Blend contends there is

> a genuine issue of material fact that [American Select]: (a) misrepresented pertinent facts or insurance policy provisions relating to coverage; (b) failed to acknowledge and act reasonably promptly upon communications with respect to claims; (d) refused to pay claims without conducting a reasonable investigation based upon all

9

available information; (e) failed to affirm or deny coverage of claims within a reasonable time after proof-of-loss statements have been completed; and (n) failed to promptly provide a reasonable explanation of the basis of the denial of the claim under N.C. Gen. Stat. § 58-63-[15].[3]

(DE # 59, at 10.) In response to Hanover's motion to dismiss, Natural Blend asserts that Hanover's issuing an all risk policy and then denying its claim presents "a genuine issue of material fact regarding misrepresenting facts or policy provision [sic] and providing a reasonable basis under N.C. Gen. Stat[.] § 58-63-[15]," and "a refusal to pay, lack of good faith to settle, and compelling insured to litigate its claim under N.C. Gen[.] Stat. § 58-63-[15]." (DE # 60, at 8–9.) A violation of N.C. Gen. Stat. § 58-63-15(11) constitutes an unfair and deceptive act under North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1. See ABT Building Products Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 472 F.3d 99, 123 (4th Cir. 2006). However, Natural Blend also contends American Select and Hanover violated that Act independent of § 58-63-15(11). (DE # 16, at 31.)

American Select contends Natural Blend failed to plead sufficient facts to state a plausible unfair and deceptive trade practices claim and failed to allege actual damages incurred as a result of the unfair and deceptive acts. (DE # 31, at 17–19.) Hanover makes similar arguments. (DE # 33, at 18–20, 24.) Additionally, as to the independent N.C. Gen. Stat. § 75-1.1 claim, Hanover further contends Natural Blend has failed to establish aggravating circumstances beyond alleged breach of contract.

In support of its N.C. Gen. Stat. § 58-63-15 and § 75-1.1 claims, alleged at paragraph 202 of its pleading, Natural Blend incorporates "paragraphs 1 through 170" and relies on "[t]he acts of [American Select] and Hanover as alleged herein." (DE # 16, at 31.) Thus, only part of the

---

[3] On occasion, Natural Blend cites N.C. Gen. Stat. § 58-63-11. However, the court believes this to be in error as that section is not codified and at other times Natural Blend cites to § 58-63-15(11).

prior pleadings are incorporated and none of the pleadings are cited with any specificity. As noted by Hanover, this pleading practice leaves the court and parties alike "guessing which specific factual allegations form the basis of Natural Blend's [unfair and deceptive trade practices] claim." (DE # 33, at 16.) Rule 8 requires the pleader to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). Natural Blend has failed to do so in this case. The only allegations referenced with any specificity are contained in Natural Blend's memoranda in response to the motions to dismiss. (DE # 59, at 10; DE # 60, at 8–9.) Those allegations are insufficient to nudge its claim under N.C. Gen. Stat. § 58-63-15(11) from conceivable to plausible. Additionally, the only damages alleged in Natural Blend's unfair and deceptive trade practices claim are those "stated herein." (DE # 16, at 31.) Throughout its pleading, the only damages asserted against American Select and Hanover are "at least" $3,238,254.70. (See, e.g., DE # 16, at 30.) This is the same amount claimed on Natural Blend's proof of loss form. (Id. at 23.) For these reasons, Natural Blend's claim under N.C. Gen. Stat. § 58-63-15(11) cannot stand.

For Natural Blend to state a claim pursuant to N.C. Gen. Stat. § 75-1.1, it must show (1) that there is an unfair or deceptive act/practice, (2) which is in or affects commerce, and (3) proximately caused injury. Elliott v. Am. States Ins. Co., 244 F. Supp. 3d 519, 522 (M.D.N.C. 2017) (citing Gray v. N.C. Ins. Underwriting Ass'n, 529 S.E.2d 676, 681 (N.C. 2000)). "Generally, a trade practice will only be deemed 'unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.'" ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 472 F.3d 99, 123 (4th Cir. 2006) (quoting Marshall v. Miller, 276 S.E.2d 397, 403 (N.C. 1981)). "It is clear, however, that conduct carried out pursuant to contractual relations

11

rarely violates the UTPA. In fact, even an intentional breach of contract is normally insufficient to contravene the UTPA; a breach of contract must be particularly egregious to permit recovery under North Carolina's UTPA." S. Atl. P'Ship of Tenn. v. Riese, 284 F.3d 518, 536 (4th Cir. 2002) (citing Canady v. Crestar Mortg. Corp., 109 F.3d 969, 975 (4th Cir. 1997); Branch Banking & Trust Co. v. Thompson, 418 S.E.2d 694, 700 (N.C. Ct. App. 1992)).

As discussed above, Natural Blend has failed to properly allege any egregious or aggravating circumstances. In its pleading, Natural Blend contends American Select *and/or* Hanover acted in bad faith and that their failure to pay the claim "[has] been intentional and not due to innocent mistake or honest disagreement." (DE # 16, at 29.) In its briefs, with regard to other claims, Natural Blend asserts that American Select "willfully contravened the procedures under the policy" and Hanover misrepresented known facts. (DE # 59, at 8.) However, it references no facts in support of these broad conclusions. In fact, at various times throughout its pleading, Natural Blend asserts that American Select and Hanover acted "negligently or intentionally," that "the conduct of one or both of [American Select] and Hanover should be construed as aggravating or outrageous," and that one and/or the other party may be liable. (See, e.g., DE # 16, at 8, 28, 30). These allegations reveal the ongoing disputes regarding liability and are insufficient to state a claim for unfair and deceptive trade practices against American Select or Hanover. American Select's and Hanover's motions to dismiss Natural Blend's unfair and deceptive trade practices claims, under N.C. Gen. Stat. § 58-63-15(11) and § 75-1.1, will be granted.

    4. **Leave to amend**

In its responses to American Select's and Hanover's motions to dismiss, Natural Blend alternatively "requests a reasonable time to amend to correct any deficiencies in the pleadings."

This one sentence request, made without citation to any legal or factual authority, does not meet the standard for a motion to amend a pleading. As such, to the extent it is considered a motion, it is denied.

### B. Motion to Strike or Sever

Hanover moves pursuant to Rule 14(a)(4) to strike, or alternatively, sever the third-party complaint filed by Natural Blend against SiloSource, Mole-Master, Manry-Rawls, and SIA. (DE # 56, at 2.) "A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). A "defendant may only bring in a third-party defendant when the third-party defendant is liable to the defendant for the losses sustained by the defendant as a result of plaintiff's claim." GE Healthcare Fin. Services v. EBW Laser, Inc., 225 F.R.D. 176, 180 (M.D.N.C. 2004). Hanover contends that there is "no derivative liability in a declaratory judgment action," because such action determines rights not liability. (DE # 56, at 3.) Mole-Master likewise argues that Natural Blend's claims against it are not derivative of American Select's declaratory judgment action. (DE # 64, at 4.) American Select's declaratory judgment action will not result in liability against Natural Blend—the purpose is to determine which insurer, if any, is liable to Natural Blend for the damage to its silo and/or product. There is no claim against Natural Blend for which any of the alleged third-parties may be liable. Rather, Natural Blend is seeking damages from Manry-Rawls, Mole-Master, SiloSource, and SIA for its direct claims of negligence and breach of contract. (DE # 16, at 21–38.) These claims may be related to the facts underlying the declaratory judgment action, but are not derivative of it. Their inclusion in this action would unnecessarily expand these proceedings. As such, Hanover's motion to sever will be granted.

### III. CONCLUSION

For the reasons stated above, American Select's and Hanover's motions to dismiss are GRANTED, and Natural Blend's negligence/negligent misrepresentation claims, bad faith (refusal to settle) claims, breach of covenant of good faith and fair dealing claims, and unfair and deceptive trade practices claims are DISMISSED. Hanover's motion to sever Natural Blend's third-party complaint is GRANTED. IT IS, THEREFORE, ORDERED that:

1. Natural Blend's third-party claims against Industrial SiloSource, Inc., Mole-Master Services Corporation, Manry-Rawls, LLC, and SIA Group, Inc. filed in this case are severed into a separate action;

2. The Clerk shall open a separate civil action for the severed case and make a public docket entry in this case reflecting the case number of the severed case;

3. The Clerk shall copy the pleadings and exhibits at DE ## 10, 16–18, 22–23, 26, 28–29, 41–43, 48, 66 in this case and docket them in the new action as of the date they were filed in this case;

4. Natural Blend is directed to pay the required filing fee to the Clerk within thirty (30) days from the date of this order;

5. Counsel for Natural Blend, Industrial SiloSource, Inc., Mole-Master Services Corporation, Manry-Rawls, LLC, and SIA Group, Inc. are directed to file a notice of appearance in the new severed action within ten (10) days from the date of this order.

This 22 March 2019.

_____
W. Earl Britt
Senior U.S. District Judge